PARTIDO UNIFICACIÓN PUERTORRIQUEÑA TRIPARTITA DE LOS PARTIDOS LIBERAL, LABORISTA Y REFORMISTA, peticionario y apelante, *v.* JOSÉ RAMÍREZ SANTIBÁÑEZ, JOSÉ E. GELPÍ y HON. EVERETT D. BROWN, SECRETARIO EJECUTIVO DE PUERTO RICO, demandados y apelados.

Núm. 8685.—*Sometido:* Marzo 5, 1943. *Resuelto:* Abril 5, 1943.

*José Sabater; Ángel M. Villamil, Julio Reguero González, Miguel A. García Méndez, Oscar Souffront, Rafael Padró Parés, Hipólito Marcano* y *Antonio Reyes Delgado,* abogados del peticionario apelante; *Luis E. Dubón, Félix Ochoteco, Jr.,* y *Benicio Sánchez Castaño,* abogados de los demandados apelados; *Hon. Procurador General Interino M. Rodríguez Ramos* y *Jesús A. González Procurador General Auxiliar,* abogados del Secretario Ejecutivo de Puerto Rico, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Éste es un pleito de *injunction* iniciado a nombre del partido político "Unificación" por sus abogados, jurando la demanda Prudencio Rivera Martínez a base de estar autorizado por el Comité Central del Partido y ser el Presidente del mismo.

Radicada la solicitud en la Corte de Distrito de San Juan, el Juez Sr. Córdova ordenó que se citara a los querellados con copia de la misma y fijó día para que las partes comparecieran y mostraran causas por las cuáles debería o no expedirse el auto, quedando, entre tanto, en entredicho.

En mayo 20, 1942, los demandados Ramírez y Gelpí por sus abogados presentaron un pliego de excepciones previas, haciendo lo propio el Secretario Ejecutivo demandado por el Procurador General. Contestaron además, separadamente, y quedó trabada la contienda.

El 21 de julio siguiente la corte declaró sin lugar las excepciones previas y la solicitud de injunction preliminar. Señalada la vista del caso en su fondo, comenzó a celebrarse el 18 y terminó el 25 de agosto de 1942, dictando el juez su sentencia el cinco de noviembre del propio año, desestimando la demanda, con las costas.

El demandante apeló, celebrándose la vista del recurso el cinco de marzo último con asistencia e informe del apelante y de los apelados Ramírez y Gelpí, por sus respectivos abogados.

No entraremos en el estudio de las excepciones previas porque fueron bien resueltas a nuestro juicio y porque según la opinión que del caso hemos formado la sentencia en los méritos deberá ser confirmada.

La demanda y la contestación de los demandados Ramírez y Gelpí son documentos extensos y la evidencia aportada por una y otra parte fué abundante—la transcripción consta de más de mil doscientas páginas—, todo difícil de resumir. En ese laberinto penetró el juez sentenciador con tal segu-

ridad y acierto, que preferimos transcribir su narración a hacerla por nosotros mismos. Dijo:

"De este caso, al cual han dado gran importancia las partes, podría decirse lo que dijo el Juez Holmes del caso de *Haddock v. Haddock*, en su opinión disidente reportada en 201 U. S. 628, 50 L. Ed. 894.(¹)

"El Partido 'Unificación Puertorriqueña Tripartita de los Partidos Liberal, Laborista y Reformista,' se organizó el 14 de júlio de 1940. Adoptó un reglamento, que crea un cuerpo directivo llamado el Comité Central, y una Comisión Ejecutiva seleccionada por el Comité Central de entre sus miembros. Dispone el reglamento que el Comité Central nombre dos secretarios. El Presidente y tres Vicepresidentes del partido son electos por asambleas del partido, disponiendo el reglamento la celebración de una asamblea el 26 de enero de 1941 para la primera elección, y asambleas sucesivas cada tres años. En cuanto a asambleas extraordinarias, dispone el reglamento que corresponde al Comité Central convocarlas en todos los casos.

"La asamblea que según el reglamento debió celebrarse el 26 de enero de 1941, fué pospuesta por el Comité Central, y se celebró el dos de febrero de 1941 en Humacao. El demandado Ramírez Santibáñez fué electo Presidente. El Comité de Resoluciones recomendó a la asamblea la aprobación, entre otras, de la siguiente resolución:

" 'Que esta Asamblea no considere los proyectos de enmiendas al Reglamento que han sido propuestos, por el fundamento de que los mismos no han sido presentados de conformidad con las disposiciones del artículo 47 del Reglamento del Partido que exige que toda enmienda que haya de ser consignada en la convocatoria, al efecto, con expresión de el o los artículos objeto de enmiendas, o la materia objeto de enmienda cuando fuera por adición; y se ordena

" 'Primero: Al Comité Central que designe una Comisión especial para que estudie las propuestas enmiendas al Reglamento, todas ellas previa circulación y publicación de las mismas entre los Comités Locales; y

" 'Segundo: Que se propongan las enmiendas propuestas al reglamento para ser consideradas las mismas en una asamblea extraordinaria que tendrá efecto en uno de los días de la segunda quincena del mes de mayo del año en curso, en la cual también se considerarán

---

(¹) "I do not suppose that civilization will come to an end whichever way this case is decided." 201 U.S. 628.

todos aquellos asuntos que a juicio del Comité Central afecten los intereses de la comunidad.'

"La prueba de la parte demandante sostiene que la resolución fué aprobada por la asamblea sin enmiendas. Los demandados han presentado prueba al efecto de que hubo cierta oposición al proyecto de resolución recomendado por el Comité, y que el Presidente del Comité, Félix Ochoteco, redactó de su puño y letra un proyecto sustituto de resolución, que sostienen los demandados fué el que aprobó la asamblea, y que lee como sigue:

" 'Que se ordene por esta asamblea la celebración de una Asamblea Extraordinaria de la Unificación Puertorriqueña Tripartita para tener efecto, preferiblemente, en uno de los días de la segunda quincena de mayo del año en curso o en cualquiera otra fecha posterior que designe el Presidente, en la cual Asamblea Extraordinaria se considerarán todos aquellos asuntos que a juicio de la Presidencia afecten los intereses de la colectividad, y de modo especial las enmiendas al Reglamento que han sido traídas a la consideración de esta asamblea.'

"No se celebró la asamblea extraordinaria en mayo de 1941. El 14 de septiembre de 1941 se reunió el Comité Central en Caguas y resolvió debía celebrarse una asamblea extraordinaria no más tarde del 15 de enero de 1942, facultándose a la Comisión Ejecutiva para fijar la fecha. Tampoco se llegó a celebrar la asamblea en enero de 1942.

"Por entender que el Presidente se negaba a convocar al Comité Central, un grupo de 23 miembros del comité solicitaron de los vicepresidentes convocaran a una reunión. Los vicepresidentes entonces, amparándose en el artículo 2 del reglamento, convocaron al Comité Central para reunión extraordinaria que se celebraría en el Ateneo Puertorriqueño el 22 de marzo de 1942. Se celebró la reunión, a la cual no asistió el Presidente, quien ya había convocado para una asamblea extraordinaria del partido, y una reunión del Comité Central, a celebrarse ambas el 12 de abril de 1942. La reunión de marzo 22 de 1942 del Comité Central declaró 'ausente' al Presidente, y designó para presidir el partido, mientras durase la 'ausencia' del Presidente, al Vicepresidente Rivera Martínez. En dicha reunión se acordó también convocar una asamblea extraordinaria del partido para celebrarse el 5 de abril de 1942.

"Dos días después de la reunión del Ateneo, Ramírez Santibáñez declaró enmendada su convocatoria a asamblea extraordinaria del

partido, y reunión del Comité Central, y adelantó la fecha de la asamblea y la reunión al 29 de marzo de 1942.

"Dos días después, el 26 de marzo de 1942, Rivera Martínez convoca a reunión extraordinaria del Comité Central. Se reúne una mayoría del Comité al día siguiente, y declara a Ramírez Santibáñez 'incurso en incapacidad' designando a Rivera Martínez para sustituirlo interinamente como Presidente.

"El 29 de marzo de 1942 se celebró en San Juan la asamblea para la cual convocara Ramírez Santibáñez. La asamblea acordó cambiar el nombre del partido a 'Partido Liberal Puertorriqueño,' y adoptar como insignia una estrella. El Secretario Ejecutivo, a base de esta resolución, hizo las entradas correspondientes en su registro.

"Durante el curso de la asamblea se pretendió celebrar una reunión del Comité Central, con el fin de ratificar la convocatoria de Ramírez Santibáñez. Es obvio que no hubo tal reunión, por falta de quórum.

"La parte demandante impugna la asamblea de marzo 29 de 1942, por no haberse convocado debidamente, y pide se ordene al Secretario Ejecutivo restituya el *statu quo* en cuanto al nombre e insignias del partido. También se alega que Ramírez Santibáñez y Gelpí usurpan los puestos de Presidente y Secretario, respectivamente, y se pide un injunction que les prohiba actuar como tales.

"De las alegaciones y de la prueba resulta que Ramírez Santibáñez fué electo presidente del partido en asamblea celebrada en febrero de 1941, en Humacao. El reglamento no autoriza al Comité Central a destituir al Presidente. Aún cuando hubiesen sido válidas las reuniones del Comité Central celebradas el 22 y 27 de marzo de 1942, fueron inefectivas sus resoluciones declarando a Ramírez Santibáñez 'ausente' primero, y luego 'incurso en incapacidad.' La prueba demuestra que la ausencia y la incapacidad imputadas a Ramírez Santibáñez por una mayoría del Comité Central constituyen sencillamente la expresión de la falta de confianza de dicho Comité en un Presidente que dicho Comité no había electo ni tenía facultad para destituir.

"Tenemos pues, que Ramírez Santibáñez, desde febrero de 1941, viene siendo el Presidente del partido. Como tal convocó la asamblea de marzo 29 de 1942. El reglamento no le confiere tal autoridad. Sostiene, sin embargo, que la asamblea de Humacao delegó en él la determinación de la fecha y lugar de la próxima asamblea extraordinaria. Veamos cuál fué la resolución que aprobó la asam-

blea de Humacao sobre este extremo. Sobre el particular existe un abierto conflicto de evidencia.

"Testigos como Soltero, Padró Parés, Gallart y Rivera Martínez, entre otros, de cuya veracidad no duda la corte, nos dicen que la Asamblea de Humacao adoptó la resolución que propuso el Comité de Resoluciones. Testigos como Seín, Marques, Pavía y Ochoteco, a quienes consideramos igualmente veraces, nos aseguran que hubo una moción sustituta, que fué la que se aprobó. Y Ochoteco identifica un escrito que obra en poder del demandado Gelpí, junto con otros escritos referentes a resoluciones consideradas en la asamblea, o en el Comité de Resoluciones, y nos asegura que ese escrito lo preparó él de su puño y letra, y constituye la moción sustituta que fué aprobada.

"Creemos que la resolución aprobada fué la sustituta que identificó Ochoteco, o sea, la que delega en el presidente la facultad de convocar para la próxima asamblea extraordinaria. Aquellos testigos de la parte demandante en cuya memoria no existe la moción sustituta de Ochoteco, han sido fieles a su memoria, pero su memoria no ha sido espejo de la realidad. Y es natural que así sea. Estaban declarando los testigos de ambas partes sobre una asamblea celebrada año y medio antes. Y estaban declarando sobre una resolución que, en aquel entonces, tenía una importancia secundaria. El asunto principal que se discutió en aquella asamblea fué aquel al que se le dió el nombre de 'normas legislativas.' Todo lo demás era secundario. Y no sólo era la resolución que estamos considerando secundaria a otros asuntos discutidos en la asamblea, si que, dentro de la propia resolución, lo principal era la posposición de la consideración de enmiendas al reglamento, y lo secundario era lo que ahora nos ocupa, o sea, quién habría de convocar la próxima asamblea extraordinaria, y cuándo. Nada de particular tiene, pues, el que muchos de los concurrentes a la asamblea no recuerden todo lo que le ocurriera a la resolución sobre enmiendas al reglamento, o el que muchos no se dieran cuenta de que la resolución que se aprobó fué distinta, en ciertos particulares, de la que propuso el Comité de Resoluciones.

"Como hemos dicho, creemos que algunos de los testigos de cada parte declararan la verdad de lo que ellos recordaban en cuanto a la resolución sobre enmiendas al reglamento y próxima asamblea extraordinaria. Resolvemos el conflicto a favor de los demandados, porque no creemos que la declaración de testigos como Ochoteco, Pavía, Marques y Seín sea fabricada. Y de no ser cierta esa prueba

tendríamos que convenir que fué fabricada, y fabricado el escrito que identificó Ochoteco como contentivo de la moción sustituta que fué aprobada por la asamblea. En cuanto a la prueba de la demandante, puede muy bien estar, como creemos está, equivocado el recuerdo de sus testigos. Y en la prueba de la demandante se encuentran detalles que tienden a corroborar la teoría de los demandados. Los testigos Aponte y Salvá, por ejemplo, recuerdan que hubo oposición a la resolución propuesta por el Comité de Resoluciones y que hubo cierta discusión, aunque no recuerdan qué fué lo que se discutió. Rivera Martínez también recuerda alguna ligera discusión. Nadie nos supo explicar lógicamente el por qué de la discusión u oposición. Quizás fué de esas discusiones u oposiciones que no se explican, y que sólo surgen del deseo de algún delegado de dirigirse a la asamblea.

"Debemos añadir que, al resolver el conflicto de evidencia en cuanto al texto de la resolución aprobada en la asamblea, no le hemos dado peso alguno al libro de minutas que presentó en evidencia la parte demandada, por no tener dicho libro las garantías de autenticidad que exige el reglamento del partido.

"Dada la conclusión a que hemos llegado en cuanto a lo ocurrido en la asamblea de Humacao, resulta que el demandado Ramírez Santibáñez fué autorizado por dicha asamblea a hacer la convocatoria para la asamblea de marzo 29 de 1942. No se impugna la asamblea de marzo 29 de 1942, ni los acuerdos allí adoptados, excepto a base de la insuficiencia de la convocatoria. Debemos, por lo tanto, considerar válido el acuerdo de la asamblea de marzo 29 de 1942 sobre cambio de nombre e insignia del partido.

"Réstanos considerar aquella parte de la demanda que se refiere a las actuaciones del demandado Gelpí. Gelpí fué destituído como Secretario en la reunión del comité central celebrada en el Ateneo el 22 de marzo de 1942. Tenemos alguna duda en cuanto a la validez de la convocatoria a dicha reunión. Asumiendo que fuera válida, y que por lo tanto Gelpí fué debidamente destituído de su cargo de secretario, pasemos a considerar si las alegaciones justifican la expedición de un *injunction* contra Gelpí.

"En la alegación XXIII de la demanda se queja la demandante de que Gelpí y Ramírez Santibáñez conspiraran para hacer aparecer que una asamblea del partido acordara el cambio de su nombre e insignias. Sea o no Gelpí el secretario, la asamblea se celebró, y la resolución sobre nombre e insignias se aprobó, luego Gelpí tiene derecho a insistir en que ha habido cambio de nombre y de insignias.

"Igual podemos decir de lo alegado en la alegación XXVIII de la demanda, donde se queja la parte demandante de que tanto Gelpí como Ramírez Santibáñez actúan a base del cambio de nombre e insignias. Y en cuanto a actuaciones de Gelpí relacionadas con maquinillas, mesas, listas electorales, o dineros, no hay prueba que justifique un *injunction*..

"De lo expuesto resulta que, siendo válida la convocatoria hecha para la asamblea de marzo 29 de 1942, y por lo tanto eficaz el acuerdo sobre cambio del nombre y de las insignias del partido, siendo Ramírez Santibáñez el Presidente del Partido, y no apareciendo que Gelpí, sea o no éste secretario del partido, esté cometiendo actos que causen daño irreparable a la parte demandante, debe dictarse sentencia declarando sin lugar la demanda, con las costas."

La sentencia se dictó y registró de conformidad y el demandante apeló de ella para ante este tribunal. Su alegato de más de cien páginas revela un estudio no sólo amplio si que completo e inteligente de los hechos y la ley. Señala cuatro errores como cometidos por la corte al admitir en evidencia los *exhibits* 6, 7 al 30 y 31 de los demandados; al resolver que la convención de la Unificación celebrada en Humacao el dos de febrero de 1941, adoptó un acuerdo autorizando al Presidente Ramírez a convocar una asamblea extraordinaria del Partido; al resolver que el Presidente de la Unificación, Ramírez, tenía autoridad legal y reglamentaria para convocar la asamblea celebrada en San Juan el veintinueve de marzo de 1942, y al declarar sin lugar el injunction.

Examinemos el primer error. La admisión del *exhibit* 31—libro de actas de la Unificación—debe descartarse. Conocemos lo dicho en cuanto al mismo por el juez de distrito en su relación del caso y opinión.

El exhibit 6 es el documento transcrito al principio de la relación del caso y opinión de la corte sentenciadora. Se introdujo por los demandados Ramírez y Gelpí para probar alegaciones de su contestación sobre lo acordado por la asamblea de Humacao en relación con la celebración de la pró-

xima asamblea extraordinaria del partido, y a su admisión se opuso el demandante a base del carácter "self-serving" de la evidencia.

Al documento se refirieron varios testigos que declararon sobre su contenido y sobre cómo y por qué fué redactado y aprobado. Otro, su autor, Félix Ochoteco, manifestó en relación con el mismo, lo que sigue:

"Mientras estaba engolfada la asamblea discutiendo la conveniencia o inconveniencia de aprobar el dictamen del Comité de Resoluciones. yo ocupaba la mesa presidencial, y yo escuchaba las diferentes corrientes que se estaban manifestando en pro y en contra, y entonces redacté una moción sustituta, allí en la misma mesa presidencial, que creía yo que hasta cierto punto armonizaba toda aquella discusión, y antes de darla a conocer a la asamblea consulté con el presidente del partido si él creía conveniente aquello que a mí me pareció, me dijo que sí, entonces el presidente anunció que iba a hacer una moción sustituta. La hice por el micrófono y fué la que quedó aprobada."

La autenticación del exhibit fué completa. No se cometió error alguno a nuestro juicio al admitirlo en evidencia. La objeción del demandante va más bien a su fuerza probatoria que a su admisibilidad.

Los exhibits 7 al 30 se ofrecieron en evidencia como los originales de las resoluciones de la asamblea de Humacao. El demandante se opuso a su admisión porque no constituían prueba sobre el punto en controversia. Inquirió la corte acerca de su pertinencia y se le dijo que eran evidencia corroborativa de carácter primario de la verbal ofrecida. Fueron finalmente admitidos porque servirían "para ayudar a la corte a determinar cuán buena o mala es la memoria de los testigos".

Atendidas las circunstancias concurrentes, no creemos que la corte errara al adoptar esa actitud. A lo sumo lo que hizo fué recargar el récord con algo innecesario. No hubo error pero, de haberlo, no fué perjudicial.

■ Por el segundo error se impugna la apreciación de la prueba. Su resolución lleva consigo la decisión del litigio. Al comenzar a discutirlo dice el apelante:

"Comprendemos la dificultad que acompaña a la exposición y argumentación de este error. El juez que presidió la corte goza de un prestigio extraordinario, bien ganado a nuestro juicio, ante este honorable Tribunal Supremo, y ante toda nuestra comunidad.

"El mero hecho de haber sido apreciada la evidencia, en la forma en que este juez lo ha hecho, podría invitar a esta Superioridad a cerrar el caso en definitiva, y a no penetrar en el estudio de la evidencia, más allá de lo necesario para concluir ratificando la doctrina bien establecida, que este Tribunal Supremo no intervendrá en la apreciación que el juzgador haya hecho de la evidencia, a menos que se establezca de manera clara que el sentenciador actuó movido por pasión, prejuicio o parcialidad.

"Desde este momento queremos dejar admitido que no creemos que el juez sentenciador haya dictado la sentencia que dictó, apreciando la prueba en la forma en que lo hizo, porque estuviera prejuiciado, apasionado o parcializado; sin embargo, vamos a entrar en el análisis de la evidencia de una y otra parte, según la pesó el juez inferior, con el propósito de demostrar a este honorable Tribunal Supremo que, independientemente de pasión, prejuicio o parcialidad, interpretó la prueba y aquilató las declaraciones con manifiesto error."

Transcribe entonces gran parte de la relación del caso y opinión del juez de distrito y trata por páginas y páginas de rebatir sus conclusiones y razonamientos analizando los testimonios, comparándolos, pesándolos, logrando a veces levantar dudas pero sin llegar nunca a destruir las unas y los otros. Estudiada la transcripción, queda satisfecha la conciencia judicial de que el criterio de la corte sentenciadora tiene sólida base en ella y de que de los dos caminos a seguir, es dicho criterio el más seguro y el más equitativo, atendidas todas las circunstancias concurrentes, aquellas que surgen clara y expresamente de la prueba y las otras que se deducen de la misma. No se ha demostrado la existencia del segundo error.

■ Por el tercero contiende el apelante "que, aceptando, a los efectos del argumento, que la asamblea celebrada en Humacao, autorizó al Presidente, Ramírez Santibáñez, a designar la fecha de la próxima asamblea extraordinaria, preferiblemente en la segunda quincena del mes de mayo, o en cualquier otra fecha posterior, aún así Ramírez Santibáñez no podía hacer otra cosa que fijar fecha para la asamblea, y era su deber convocar al Comité Central para que éste señalara el sitio donde habría de celebrarse la asamblea, y dictara las reglas por las cuales habría de regirse la misma; y, convocar la asamblea. Es decir, a nuestro juicio, el haber autorizado al señor Ramírez Santibáñez para designar la fecha, no arrebató al Comité Central los poderes exclusivos que, de acuerdo con el reglamento, tiene para convocar las asambleas o convenciones."

Es cierto que el reglamento del partido otorga la facultad de convocar las asambleas extraordinarias al Comité Central y que en la resolución adoptada por el partido en Humacao sólo se encomendó al presidente la designación de fecha, pero lo es también que la resolución en sí misma constituye la convocatoria de la asamblea extraordinaria de que se trata "para tener efecto, preferiblemente, en uno de los días de la segunda quincena de mayo del año en curso o en cualquiera otra fecha posterior que designe el presidente." La facultad para escoger el sitio debe entenderse conferida implícitamente para que el acuerdo pudiera ser cumplido.

La asamblea de Humacao era el partido y pudo actuar en la forma en que lo hizo. Su actuación en cuanto a su poder para dictar la resolución de que se trata no se impugna e interpretada rectamente su resolución por sí misma no cabe otra conclusión que no sea la de que delegó en el presidente que acababa de elegir y en quien depositó toda su confianza, la realización de todo lo que faltaba para que la celebración de la asamblea extraordinaria que acordaba pudiera tener efecto en el momento oportuno sin necesidad

de la intervención de ningún otro funcionario u organismo del partido.

Esa interpretación está además en armonía con lo que entendieron que significaba la resolución en el momento de votarla los que la adoptaron y con el mal que trataba de corregir, esto es, tener que citar a un cuerpo tan numeroso como el Comité Central para el solo hecho de convocar la asamblea.

Se insiste por el apelante en que hay una "razón adicional" para sostener su criterio. Dice a ese efecto en su alegato: "Suponiendo, que no admitimos, que el acuerdo de la asamblea de Humacao hubiera sido el de autorizar al presidente para designar la fecha, más aún que hubiera sido autorizarle para fijar el sitio y expedir él la convocatoria, esa autoridad terminó inmediatamente que el Comité Central se reunió, en la ciudad de Caguas, el 14 de septiembre de 1941 y adoptó la resolución de celebrar una asamblea extraordinaria, antes del 15 de enero de 1942, en día que fijaría la Comisión Ejecutiva."

La razón es de peso, pero no decisiva. Dada la autorización conferida al presidente por la asamblea de Humacao, no había en verdad necesidad de encomendar a la Comisión Ejecutiva la designación de fecha. Eso no obstante lo cierto es que así se hizo, con la intervención y aquiescencia del propio Presidente Ramírez.

Pero si se tiene en cuenta que el que actuó lo fué el Comité Central y no otra asamblea y que la encomienda se dió para ser ejecutada antes del 15 de enero de 1942, pasando esa fecha sin que se cumpliera, tendrá que concluirse que su vida se extendía únicamente hasta la expresada fecha, y como la actuación del Presidente Ramírez en relación con la asamblea de San Juan, lo fué después, en nada quedó afectada por el acuerdo.

La "razón adicional" carece, pues, como dijimos, de fuerza decisiva.

La vida del cuarto error depende de la de todos o de la de alguno o algunos de los tres primeramente señalados y como ninguno de los tres fué cometido, cae por su base.

*Debe declararse el recurso sin lugar y confirmarse la sentencia recurrida.*

El Juez Asociado Sr. De Jesús no intervino.